UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY<br>COMPANY OF AMERICA, as subrogee of<br>TRANSCORE HOLDING, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>MANPOWER, INC.,<br><br>      Defendant. | CIVIL ACTION NO.04-12505-WGY |

## JOINT PRETRIAL MEMORANDUM

Plaintiff Travelers Property Casualty Company of America ("Travelers") and defendant Manpower, Inc. ("Manpower") submit this pretrial memorandum.

**I.   SUMMARY OF EVIDENCE**

    **A.   Plaintiff**

This case arises from a series of fires started by Timothy Mickiewicz in an office building in Auburndale, Massachusetts in November 2001.

Travelers will submit documentary evidence and testimony demonstrating Travelers' claims against Manpower, the employment agency who hired and supervised Mickiewicz, for breach of contract, negligence, and negligent supervision. Travelers, as the subrogee of its insured, Transcore Holding, Inc. ("Transcore") seeks damages of $1,747,623.19, for amounts it paid for property loss from the fire that occurred at 27 Midstate Drive, Auburndale, Massachusetts. Travelers paid out $643,019.90 to Transcore, and $1,083,247.29 was paid to the

Massachusetts Turnpike Authority ("the MTA" – an additional insured under Transcore's policy).

Travelers states that the evidence it offers will demonstrate that the defendant Manpower was negligent, and breached its duty to Transcore, first, by employing Timothy Mickiewicz (the admitted arsonist) without doing an adequate background check and drug test, and second by failing to properly supervise Mickiewicz during his employment and upon his return to employment after he entered rehabilitation for a drug problem. Mickiewicz's subsequent actions in starting four fires at 27 Midstate Road could have been prevented had this troubled young man's background history and drug problems come to light. Mickiewicz admitted that he had set all four fires, pleaded guilty and was convicted of four counts of arson.

The last fire caused almost two million dollars in damages to Travelers' insured at 27 Midstate Drive. Travelers ultimately paid $1,747,623.19.

**B.      Defendant**

The claims against Manpower are based on the theory that it should have foreseen and prevented the arson committed by one of its temporary employees, Timothy Mickiewicz. To the contrary, the evidence will establish not only that Manpower had no reason to believe Mickiewicz was a risk to commit arson, but also that no one – including TransCore, his *de facto* employer and supervisor, and law enforcement – suspected he was the arsonist until his arrest ***almost one year after the last in a series of four fires***.

The case arises from an arson fire on November 30, 2001, in a two-story office building at 27 Midstate Drive, Auburn, Massachusetts (the "property"). Manpower was a supplier of some of the temporary workers used by TransCore at the property, including Mickiewicz, who intentionally set the fire. Mickiewicz started at Manpower in May 2000, and in September 2000 he was assigned to work for TransCore at the Massachusetts Turnpike Authority's ("MTA")

2

FASTLANE project at the property. He began full-time in the Customer Service Unit in December 2000, and in February 2001 he was reassigned to the Violations Processing Unit, where he was working at the time of the fires. At the time of the reassignment, Manpower performed a criminal background check on Mickiewicz, which revealed no record. Manpower maintained an employee on-site at the property to deal with administrative aspects of the placements, while TransCore supervisors were responsible for day-to-day direction of work activities. Deposition testimony from on-site representatives of Manpower, TransCore, and the MTA is consistent in its characterization of Mickiewicz as a "good employee," a "great worker," and "terrific with customers." He was also rewarded for his work on at least one occasion, when TransCore named him "Employee of the Month." One TransCore supervisor, Rocco Micciche, testified that as a further reward for job performance, Mickiewicz was offered a full-time position at TransCore, which he declined because it was for a late shift. The offer was part of an overall move by TransCore to increase its permanent workforce by hiring Manpower temporary workers; several were hired, including Sheila Apkarian (who had been the Manpower on-site supervisor) and Micciche. Mickiewicz took a total of four drug tests during his employment, all negative (one test came back "diluted," which registers as a negative), while two other Manpower employees refused to be tested and were terminated. Mickiewicz's supervisors testified that they otherwise had or saw no evidence that he had ever done drugs at work.

  The fire that caused plaintiff's alleged damages was the fourth in a series intentionally set in or around the attic of a men's restroom on the second floor of the property (the first three caused little damage, the fourth resulted in a total loss of the building). The restroom was in a common area of the building controlled by the landlord, Paino Associates ("Paino"). After the earlier fires, TransCore and Paino instituted security measures around the restroom, including a monitored sign-in procedure, that were in place at the time of the ultimate fire.

Mickiewicz continued to work at TransCore until March 11, 2002, several months after the last fire. Local, state and federal authorities were involved in a thorough investigation, conducting "hundreds" of interviews. Nonetheless, Detective Sergeant Jeffrey Lourie of the Auburn Police testified that Mickiewicz was never a suspect and, moreover, that even had he known about a later-discovered or suspected juvenile record or drug use, he would not have elevated Mickiewicz to suspect status. Mickiewicz was arrested only as a result of an anonymous tip received by the Auburn Police and his subsequent confession. Several people who worked with him testified that they were "surprised" or "shocked" when they learned he was the culprit.

The evidence will establish that Manpower had no reason to believe that Mickiewicz was a risk to commit arson. TransCore/Travelers argues that Manpower knew or should have known that Mickiewicz may have had a **sealed** juvenile criminal record, that he had a problem with marijuana use (despite no failed drug tests), and that he was in a drug treatment facility a few months before the fires (despite testimony that no one knew the treatment was for drug use at the time). There is no evidence that Manpower knew of any of these issues *prior to the fires*, and by all accounts, Mickiewicz was a good employee, passed numerous drug tests, and had a clean criminal background check. Indeed, TransCore subsequently hired the Manpower employee (Apkarian) who they now claim negligently retained and supervised Mickiewicz.

Even if TransCore/Travelers could establish that Manpower knew of Mickiewicz's sealed juvenile record and drug use, such knowledge does not make it reasonably foreseeable, as a matter of law, that he would commit arson. At most, the plaintiffs can prove that Manpower knew or should or could have known that Mickiewicz was "in lockup" prior to his 18th birthday, that he took a leave of absence prior to the fires, and that he smoked marijuana (though there is no evidence he ever did so at work). These facts, assuming they were known by Manpower,

4

indicate Mickiewicz may not have been an ideal employment candidate, but they certainly do not make it reasonably foreseeable that he would become an arsonist. The law is clear that the nature of an employee's past criminal record is paramount in determining an employer's liability. In a frequently cited Massachusetts case on negligent supervision and retention, the Appeals Court noted that, "*[a]n employee's past conviction of larceny by check would not make the employer liable, on the basis of negligent hiring or negligent retention, for the employee's subsequent rape of a customer.*" *Foster v. The Loft, Inc.*, 26 Mass. App. Ct. 289, 295 n.7 (1988); *see also Coughlin v. Titus Bean Graphics, Inc.*, 54 Mass. App. Ct. 633, 639 (2002) (murder committed by employee not reasonably foreseeable by employer despite knowledge of criminal history of sexual assault). Similarly, no reasonable jury could find that drug use, a leave of absence, and an unspecified juvenile record should have led Manpower to foresee that Mickiewicz would set fire to his place of employment. Further, for over a year before the fire, TransCore directly supervised Mickiewicz and was in the best position of any party to observe and foresee his behavior. TransCore suspected nothing, praised him, and tried to hire him directly. If Manpower is found negligent in the Travelers action, TransCore's comparative negligence will bar any recovery.

Assuming Manpower's liability, *arguendo*, plaintiff's claims are significantly flawed or inflated in several respects. First, the claims are based on replacement value of property, whereas plaintiff is entitled to recover only actual value, for which there is no evidence. Second, the alleged damages are further exaggerated by the inclusion of substantial unrelated and duplicative claims. Finally, the damages alleged by Travelers include over $1 million paid to the MTA that cannot legally be recovered from Manpower, either because Travelers lacks standing or because it voluntarily paid the MTA without notice to Manpower.

## II. AGREED STATEMENT OF FACTS

Transcore runs the Fastlane system for the MTA. Transcore and the MTA were both tenants in the building at 27 Midstate Drive, Auburndale, Massachusetts. Manpower is an employment agency that provides clerical and other employees to companies such as Transcore.

Timothy Mickiewicz ("Mickiewicz") was one of the employees that Manpower provided to Transcore. Mickiewicz applied to work at Manpower in December 1999. He was first assigned to Transcore in September 2000. Mickiewicz worked for Manpower sporadically in September and October 2000, and began working full-time at the site in December 2000. He intitially worked in customer service, and then in February 2001 he became an appeals clerk.

On November 12, 2001, a fire began in the stairwell leading to the attic above the second floor men's restroom. A second fire was set some two days later – this time in the dropped ceiling above the men's restroom. A third fire was set on November 29, 2001. This fire was also set in the men's bathroom. Following this fire, Transcore set up a table in the hallway with a sign-out sheet for the bathroom keys. The sign-out system was begun in the afternoon of November 29, 2001. On November 30, 2001, the second-to-last entry at 3:01 p.m. was the name of Timothy Mickiewicz. It was not until one year later, when two of Mickiewicz's friends talked to the police, that Mickiewicz was identified as the individual who set the fires. Mickiewicz admitted the crime and was convicted of arson.

## III. CONTESTED ISSUES OF FACT

A.   Whether Manpower had a contract to perform background checks and drug testing prior to placing employees at the Transcore site.

B.   Whether and to what extent Manpower and Transcore had supervisory authority over Mickiewicz at the Transcore site.

    C.    What Manpower and Transcore knew, or could and should have known, concerning 1) Mickiewicz's being in lockup prior to his commencing employment; 2) Mickiewicz's "hospitalization" in October 2001; 3) Mickiewicz's stated concerns about the use of drugs at the Transcore workplace; and 4) Mickiewicz's statement that he was threatened by at least one employee at the workplace.

    D.    Whether Manpower or Transcore encouraged Mickiewicz to return to work following his "hospitalization."

    E.    Whether Manpower or Transcore should have performed an additional drug test on Mickiewicz when the third test came back "diluted, " and whether the drug tests that Manpower had Mickiewicz take in 2001 were properly applied and analyzed.

## IV. JURISDICTIONAL QUESTIONS

None.

## V. QUESTIONS RAISED BY PENDING MOTIONS

None.

## VI. ISSUES OF LAW

    A.    Whether Manpower owed a contractual or common law duty to Transcore to perform background checks and drug tests on all employees before placing them at the Transcore facility, and whether Manpower breached such a duty when it supplied Tim Mickiewicz to Transcore in 2000 without first performing a background check or a drug test.

    B.    Whether, under the facts of this case, Manpower's knowledge that Tim Mickiewicz had been in lockup when first employed should have alerted a reasonable employer to perform an additional investigation.

    C.    Whether Manpower or Transcore negligently retained or supervised Mickiewicz in October and November 2001 by failing to re-assign Mickiewicz to a different job site, if they

knew, or could and should have known, 1) that Mickiewicz had a juvenile record, 2) that Mickiewicz had just been voluntarily hospitalized for drug use; 3) that Mickiewicz did not want to return to the Transcore facility because of his expressed concern that there was drug use at that facility; 4) that Mickiewicz's November 21, 2006 drug test came back "diluted" ; and 5) that Mickiewicz had made complaints that someone was threatening him at the Transcore facility.

      D.    Whether, once the fires were being set at the Transcore facility, a reasonably prudent employer would have known that the fires were the result of an "inside job" and would have performed further background checks and investigations of employees such as Mickiewicz, who had indicated a desire not to return to that facility.

      E.    Whether Judge Keeton's evidentiary findings of fact are admissible in the jury trial of this case.

      F.    Whether it was reasonably foreseeable, as a matter of law and fact, that Mickiewicz would commit arson at his place of employment. *E.g.*, *Coughlin v. Titus Bean Graphics, Inc.*, 54 Mass. App. Ct. 633, 639 (murder committed by employee not reasonably foreseeable by employer despite knowledge of criminal history of sexual assault); *Foster v. The Loft, Inc.*, 26 Mass. App. Ct. 289, 295 n. 7 (1988) (employee's past conviction of larceny by check insufficient to impose liability on employer, on basis of negligent hiring or retention, for employee's subsequent rape of customer).

      G.    Whether Transcore's negligence is sufficient to bar plaintiff's recovery.

## VII. REQUESTED AMENDMENTS TO THE PLEADINGS

None.

## VIII. ADDITIONAL MATTERS TO AID IN THE DISPOSITION OF THE ACTION

One significant source of disagreement between the parties is the amount of Travelers' damages. Accordingly, both parties suggest that the trial be bifurcated, and that the damages be

8

tried following the trial on liability, which will have substantially different witnesses, and which will be shorter. The parties will work together to attempt to narrow the issue of Travelers' damages.

## IX. PROBABLE LENGTH OF TRIAL AND WHETHER JURY OR NONJURY

This is a jury trial. If the liability issue is separated from the issue of damages, the parties estimate that trial can be completed in four full trial days.

## X. WITNESSES

Sheila Apkarian   (FACT)
Transcore
254 Pond Street
Hopkinton, MA

Claudia Wiegand   (FACT)
Transcore Holdings, Inc.
8158 Adams Drive
Hummelstown, PA

Angela Beane   (FACT)
Transcore
500 Edgewater Dr # 580
Wakefield, MA

Judy Condon   (FACT)
112 Old Meetinghouse Rd
Auburn, MA 01501-3348

Deborah Eckert   (FACT)
457 Pritchard Court
Harrisburg, PA

Rocco V. Micciche   (FACT)
Transcore
500 Edgewater Dr # 580
Wakefield, MA

Ronald Rahn   (FACT)
Transcore
95 Warren Street
Boylston, MA

Mark Spengler   (FACT)

189 Jason Street
Arlington, MA

Robert Ferrara       (FACT)
7 Town Farm Road
North Brookfield, MA

Robert Powers       (FACT)
Address unknown

Jeff Lourie       (FACT/EXPERT)
Auburn Police Department
416 North Oxford Street
Auburn, MA

Todd M. Hammond    (FACT/EXPERT)
Auburn Police Department
Auburn, MA

Timothy Bombard     (FACT/EXPERT)
Massachusetts State Police

Lieutenant Stephen. Anderson    (FACT/EXPERT)
Auburn Fire Department
Auburn, MA

Agent Croke       (FACT/EXPERT)
Bureau of Alcohol, Tobacco and Firearms

Assistant District Attorney Richard Greco   (FACT)
Worcester, MA

Timothy Mickiewicz  (FACT)
Spencer, MA

Jim. Mickiewicz       (FACT)
(Father of Timothy Mickiewicz)

Beverly Sundquist       (FACT)
19 Summit Street
Spencer, MA

Kimberly Sundquist   (FACT)
36 High Street
Spencer, MA

Corey Kertson       (FACT)
Spencer, MA

10

Daniel Plante          (FACT)
204 Main Street
Spencer, MA

Jennifer Graves        (FACT)
36 Barnes Road
North Brookfield, MA

David H. Reed          (FACT/EXPERT)
Travelers Property Casualty Co.
300 Windsor Street
Hartford, CT 06120

James Paino            (FACT)
Auburn, MA

Tina Rivera            (FACT)
110 Fairmont Avenue
Worcester, MA  01604

Timothy Condon         (FACT)
Address Unknown

Mark Bennett           (FACT)
Address Unknown

Thomas Kenny           (FACT)
Address Unknown

James Carey            (FACT)
Boston, MA

Katharine Szczesney    (EXPERT)
Boston, MA

XI.  **LIST OF PROPOSED EXHIBITS**

  A.  **Plaintiff**

  1.  Manpower Contract (Defendant objects:  authenticity, relevance, hearsay.)

  2.  Portions of Spengler Exh. 42: Timothy Mickiewicz's Employment File, including

Requests for personal time and time off, Manpower Performance Evaluation dated 7/4/01, Drug

11

Screening and Background Check; and Letter from Timothy Mickiewicaz directed "to whom it may concern"

3. Timothy Mickiewicz Employment Application, Resume. Reference Request and Authorization for credit and criminal check, Drug Screen Form, W-4, Orientation Guide, Etc.

4. Manpower Inc. Employee Personal Information for Timothy Mickiewicz (Computer Download of multiple screens)

5. Memo dated April 4, 2003 from Ronald Rahn to Claudia Wiegand re Timothy Mickiewicz (Defendant objects: hearsay, relevance.)

6. Police Records from the Auburn Police Department, including Incident Report by Jeffrey Lourie and Supplemental Narrative Report dated 9/22/2002 and transcript of interviews with Beverly Sundquist, Timothy Mickiewicz, Kimberly Sundquist, Corey Kertson, Daniel Plante and Jennifer Graves (Defendant objects: hearsay, relevance.)

7. Criminal Records from the Massachusetts State Police, including three page investigative synopsis by Trooper Bombard, and Fire Investigation Summary Report by Timothy Bombard

8. Sworn Statements in Proof of Loss by Transcore Holdings, Inc. and backup support (Defendant objects: hearsay, relevance)

**B.     Defendant**

Defendant currently does not intend to introduce any exhibits on liability issues in addition to those proposed by plaintiff without objection. Defendant respectfully reserves the right to propose exhibits on damages issues if they should be reached for trial.

| Plaintiff | Defendant |
|---|---|
| Travelers Property Casualty Company Of America, as subrogee of Transcore Holding, Inc., | Manpower, Inc. |
| By its attorney, | By its attorneys, |

/s/ Sally A. VanderWeele  
Sally A. VanderWeele  
BBO No.: 541950  
Law Offices of Thomas M. Niarchos  
100 Summer Street, Suite 20  
Boston, MA 02110  
(617) 772-2800

/s/ Michael J. Grace  
Michael J. Grace, BBO# 205875  
Edward F. Whitesell, Jr., BBO# 644331  
Adler Pollock & Sheehan P.C.  
175 Federal Street  
Boston, MA 02110  
(617) 482-0600 Telephone  
(617) 482-0604 Facsimile

Dated: January 16, 2007